BARRY J. PORTMAN
Federal Public Defender
ANGELA M. HANSEN
Assistant Federal Public Defender
555 - 12th Street, Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant JOHNSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CAROLYN V. JOHNSON, ) <br> ) <br> Defendant. ) <br> _____ ) | No. 07-00489 SBA <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Sentencing Date: June 3, 2008 |

  Carolyn V. Johnson, through her attorney, Assistant Federal Public Defender Angela M. Hansen, submits this Sentencing Memorandum to request that the Court sentence Ms. Johnson to a sentence far below the advisory guidelines range of 15-21 months. The United States Probation Office recommends a sentence of 15 months — the low end of the advisory range — but what Probation seems to have overlooked is that Ms. Johnson has come remarkably far in her recovery. A life-long heroin addict with an addiction that is powerful and inexorable, for the first time in almost ten years Ms. Johnson finds herself healthy, drug-free, gainfully employed, immersed in treatment and in renewed relationships with her children, family and friends. To take her away from this extraordinary path for an extended period of custody would be a step in the wrong direction.

**The Court has the Discretion to Impose a
Sentence Outside the Advisory Guidelines Range**

The Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 128 S.Ct. 586 (2007), have dramatically altered the district court's role in sentencing. Taken together, these cases make it clear that district court judges now have the ability, as well as the duty, to exercise their judgment and discretion in arriving at a sentence that is "sufficient, but not greater than necessary," to achieve the goals outlined in 18 U.S.C. § 3553.[1]

In *Booker*, the Supreme Court held that the mandatory nature of the Sentencing Reform Act of 1984 violated the Sixth Amendment right to a jury trial. *See Booker*, 125 S.Ct. at 756. "To remedy the constitutional infirmity, the Court severed the mandatory portions of the Act, rendering its sentencing provisions, including the Sentencing Guidelines, effectively advisory." *United States v. Ameline*, 409 F.3d 1073, 1074 (9th Cir. 2005) (en banc). The Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough*, 128 S.Ct. at 564. While "district courts still 'must consult [the] Guidelines and take them into account when sentencing,'" *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (quoting *Booker*, 125 S.Ct. at 767), the district courts "may not presume that the Guidelines range is reasonable," *Gall*, 128 S.Ct. at 596-97 (citing *Rita v. United States*, 127 S.Ct. 2456 (2007)). And, as the Court's subsequent decisions in *Gall* and *Kimbrough* demonstrate, *Booker's* consultation requirement is not intended to limit the district court's sentencing discretion.

In *Gall*, the Supreme Court held that appellate courts cannot impose a requirement that "a sentence that constitutes a substantial variance from the Guidelines be justified by extraordinary

---

[1]Of course, even before the Supreme Court's decision in *Booker* rendered the Sentencing Guidelines advisory, district courts had some authority to depart from the Guidelines. *See generally* USSG § 5K (enumerating grounds for departure). But this authority was far from absolute. Certain factors were forbidden as grounds for departures and others were strongly discouraged.

Defendant's Sentencing Memorandum          2

circumstances." *Gall*, 128 S.Ct. at 591. The Court likewise rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence," *id.* at 595, and held that it is within the district court's discretion to arrive at an appropriate sentence, "whether inside, just outside, or significantly outside the Guidelines range," *id.* at 591. The Court explained:

> [B]oth the exceptional circumstances requirement and the rigid mathematical formulation reflect a practice – common among courts that have adopted "proportional review" – of applying a heightened standard of review to sentences outside the Guidelines range. This is inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions – whether inside or outside the Guidelines range.

*Id.* at 596.

The Court emphasized the importance of deferring to the judgment of the sentencing courts, explaining:

> The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. "The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court."

*Id.* at 597-98 (quoting *Rita*, 127 S.Ct. at 2469). The district courts' experience and judgment have taken on added importance because so many more sentencing options are available to it. In *Gall*, for example, the district court rejected a Guidelines range of 30 to 37 months in favor of probation. The Supreme Court acknowledged that "[i]f the Guidelines were still mandatory, and assuming the facts did not justify a Guidelines-based downward departure, this would provide a sufficient basis for setting aside Gall's sentence because the Guidelines state that probation alone is not an appropriate sentence for comparable offenses." *Gall*, 128 S.Ct. at 601-02. But, the Court went on to explain, "the Guidelines are not mandatory, and thus the 'range of choice dictated by the facts of the case' is significantly broadened." *Id.* at 602. The sentence of probation was upheld.

Ms. Johnson does not dispute the Guidelines calculation set forth in the PSR. She is at a

total offense level of 13 and a criminal history category of II, for a resulting sentencing range of 15-21 months.  Moreover, Ms. Johnson recognizes that although the Guidelines are now advisory, there remains a "continuing duty of district courts to consult the Guidelines." *Cantrell*, 433 F.3d at 1279.  The Supreme Court, however, has directed that a district court "may not presume that the Guidelines range is reasonable." *Gall*, 128 S.Ct. at 597.  "Rather, after accurately calculating the advisory range, so that it 'can derive whatever insight the guidelines have to offer, [the court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." *United States v. Villanueva*, – F. Supp. 2d –, 2007 WL 4410378 (Dec. 14, 2007 E.D. Wis.) at *1 (quoting *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007)).

As the above-cited case law makes clear, while the guidelines recommend a range of 15-21 months, the Court has the discretion and power to sentence Ms. Johnson to a sentence outside that range.  In fact, like the district court in *Gall*, this Court has the discretion and power to sentence Ms. Johnson to a probationary sentence, which is statutorily authorized for the charged offense.  *See* PSR ¶ 73.

**The Factors Enumerated in § 3553(a) Call for a
Sentence Far Below the Advisory Guidelines Range**

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to achieve the goals of sentencing.  18 U.S.C. § 3553(a).  To arrive at such a sentence, the court is directed to consider the following factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the crime, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with education, training, and medical care; (3) the kinds of sentences available; (4) the applicable Sentencing Guidelines, including any relevant policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to any victims of the

offense. *See id.* In Ms. Johnson's case, a sentence of 15 months in a halfway house would be sufficient to achieve these goals.

Ms. Johnson's extraordinary rehabilitation since her involvement in this offense suggests that a sentence lower than the guidelines range is appropriate. In 1998, Ms. Johnson began using heroin for the second time in her life. She had been off the drug for almost twenty years when she relapsed. *See* PSR ¶ 57. The drug took over her life and she fell into a vicious downward spiral, which included using her mother's identity to cash her mother's pension checks. Ms. Johnson struggled with her addiction to heroin and crack cocaine for over ten years. Through hard work, tears, enlightenment and lots of support and love, Ms. Johnson has been drug free for almost a year. *Id.* at 57-58.

Ms. Johnson does not in any way minimize the offense conduct. She realizes what she did was wrong and that her drug usage throughout the period in which she committed this offense does not in any way justify or excuse her conduct. Ms. Johnson understands that there are consequences to criminal behavior, and, in this case, a lengthy placement in a community confinement center would serve as a sufficient punishment and deterrent. It would allow her to continue to be treated for her drug addiction while at the same time she would be constantly monitored and supervised. It would also allow her the opportunity to begin paying back her debt to society, because, with the Court's permission, she would be permitted to work while in community confinement. A sentence of 15 months in the halfway house will protect the public as well, because it is a substantial sentence and Ms. Johnson will be strictly monitored while serving a community confinement sentence. This sentence will also act as a powerful deterrent and will ensure that Ms. Johnson never re-offends again.

As the sentencing court in *Gall* observed, "probation, rather than 'an act of leniency,' is a 'substantial restriction of freedom.'" *Gall*, 128 S.Ct. at 593. The court went on to explain:

> [The defendant] will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or

Defendant's Sentencing Memorandum          5

> work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court. Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term.

*Id.* The Supreme Court concurred, noting that probationers are "subject to several standard conditions that substantially restrict their liberty." *Id.* at 595. Moreover, probation with the added condition of supervision that Ms. Johnson be placed at a halfway house would further restrict Ms. Johnson's liberty because her every move there would be monitored and scrutinized.

Section 3553(a) makes clear that punishment is not the only goal of sentencing, or even the most important one. *See United States v. Carty*, 520 F.3d 984, 2008 WL 763770 (9th Cir. Mar. 24, 2008) (en banc) at *4 (no single factor identified in § 3553(a) is entitled to greater weight than any other). Equally important is the need to consider what sort of sentence is most likely to allow Ms. Johnson to rehabilitate herself and to contribute to our society.

A sentence of community confinement would allow Ms. Johnson to continue on her road to recovery. In August 2007, a month before her federal arrest, Ms. Johnson voluntarily entered Save-a-Child Mission in Bay Point, California, but later left that facility with the help of Pretrial Services to enter Center Point's inpatient facility in San Rafael, California. PSR ¶¶ 54, 58. At the time, it was important to Ms. Johnson that she leave Oakland where many of her triggers lie. She was afraid she would relapse if she did not change her entire perspective, and she needed to enter a new community where she could put her drug past behind her. After graduating from Center Point's inpatient program, Ms. Johnson entered Center Point's transitional housing program. *Id.* at 54. To this day, she is currently living at a transitional house where she is permitted to work almost full-time at Safeway in San Anselmo, California; she attends three groups per week at the house and also participates almost daily in Narcotics Anonymous meetings outside of the home. *Id.* at 54, 56-58, 61.

Ms. Johnson's work has also helped her to maintain her sobriety. It provides her with a sense of accomplishment and self-worth. And, as her son Samuel put it, now that she is

Defendant's Sentencing Memorandum              6

employed she can meet her personal and other financial responsibilities. *See* Letter from Samuel Johnson, attached hereto. She has finally come to the "point of seeing how important her life is not only to herself, but to the people who truly do care for her and have come to know her again in a pleasing" state. *Id.* If Ms. Johnson were permitted to continue her job at Safeway while residing in a halfway house, she could begin the long process of repaying her debt to society.

Ms. Johnson's son, Joseph Johnson, makes a persuasive argument that imprisonment is neither necessary nor truly appropriate given that his mother is on the road to recovery. He wrote:

> It's good to see that my mother is recovering from her past so well and showing her family and others viewing [her recovery] that she is capable of being stable in her life and continuing on that straight path as it is. I am so proud that through all of my mother's hardships, trials and errors [that] she has been granted [the opportunity] to make a change in her life for the greater good and be able to show characteristics of sincerity as well.

*See* Letter from Joseph Johnson, attached hereto. He goes on to explain:

> I can't tell you how much of a relief it is to me and her family that she is on this route of redemption, as it seems . . . we do not have to worry [whether] she will have the chance to see her children mature and see her grandchildren to come.

*Id.*

Letters from Ms. Johnson's other children echo the same sentiment. Ms. Johnson has come a "long way from her past to her present with persistence [and] courage to change and make her life better." *See* Letter from Daniel Johnson, attached hereto. Mr. Johnson explains that he and his siblings are grateful that his mother was given an "opportunity to change." *Id.* Ms. Johnson's children are pleased to see that their mother "has become a better person in life," *see* Letter from Eleazar Johnson, attached hereto, and her family can only "hope that she will continue to do as well as she is doing." *See* Letter from Micha Johnson, attached hereto.

Ms. Johnson's family understands that she allowed drugs and depression to "cause her to be less than an honorable citizen in our society." *See* Letter from Lonnie Johnson, attached hereto. "As with so many of us, obstacles and poor judgment" led Ms. Johnson to leave her

1   family for a time, but she has since "gone into rehabilitation" and her friends and family are
2   "quite pleased" with what they have seen thus far.  *See* Letter from family friend Monique
3   Tatmon, attached hereto.  Ms. Johnson has been on a long journey towards recovery and she has
4   been tremendously successful in that process.  As is clear from the letters submitted with this
5   Sentencing Memorandum, it is because of those efforts that Ms. Johnson's children have taken
6   steps to forgive her.  It is now up to Ms. Johnson to forgive herself.  Every day of her life she has
7   to live with what she put her children through.  It is a significant burden that she must carry with
8   her.
9         The foregoing analysis of many of the § 3553(a) factors demonstrates that the guidelines
10  do not serve as an appropriate or reasonable benchmark for sentencing Ms. Johnson.  The
11  guidelines reject or ignore factors which *Booker* requires this Court to consider, including Ms.
12  Johnson's extraordinary rehabilitation.  For these reasons, Ms. Johnson  respectfully requests that
13  this Court sentence her to 15 months in a halfway house — a sentence that is sufficient and not
14  greater than necessary to comply with the goals of sentencing in this case.[2]
15        The Court can impose the very sentence Ms. Johnson is requesting using an often
16  overlooked provision of the Sentencing Guidelines.  Guideline § 5C1.1, Application Note 6,
17  provides that a sentencing court may depart "*by substitution* of a longer period of community
18  confinement than otherwise authorized for an equivalent number of months of imprisonment."
19  *Id.* (emphasis added).  For example, the guideline note explains that the court could substitute a
20  sentence of twelve months custody for twelve months in a drug treatment program.  This
21  substitution is warranted if it will help to accomplish a specific treatment need.  *Id.*  In Ms.
22  Johnson's case, halfway house placement will help to accomplish Ms. Johnson's continued
23  rehabilitation and recovery.  She has a well-documented drug problem and, through intense

---

[2] If the Court declines to accept Ms. Johnson's requested sentence she respectfully requests that the Court grant her a modest three-month variance from the advisory Guidelines and sentence her to twelve months plus one day in custody.

Defendant's Sentencing Memorandum          8

treatment, has accomplished ten months of sobriety.

Application Note 6 is not a departure in levels, but a departure from the requirement of imprisonment. It is not recommended for someone with a criminal history category of III or above (*see* § 5C1.1, Application Note 7). Ms. Johnson does not fall within that restriction because she is in Category II criminal history, not Category III. Moreover, the substitution is suited for a case like this where the defendant's criminality is related to the treatment problem and where, as here, there is a "reasonable likelihood that successful completion of the treatment program will eliminate the problem." *Id*., Application Note 6. Thus, the Court could "substitute" a period of imprisonment for community confinement and participation in a treatment program. A sentence of community confinement would severely limit Ms. Johnson's liberty yet provide her with structure and the treatment she both wants and needs.

**Conclusion**

Ms. Johnson recognizes the seriousness of her crime. She has dedicated herself to understanding her actions and her addiction, not because she wants to find an excuse for what she has done, but because she wants to make sure that she never does anything like this again. She is sincere in her remorse and in her desire to continue in her recovery. She has a community of friends and family who are prepared to assist in her recovery now that she has demonstrated a genuine desire to change. This is a case in which even a relatively short prison sentence would be "greater than necessary" to achieve the goals outlined in 18 U.S.C. § 3553. For these reasons, the defense respectfully requests that Ms. Johnson be sentenced to probation with the special condition that she serve 15 months in a community confinement center along with continued drug treatment.

Dated: May 27, 2008                    Respectfully submitted,

                                       BARRY J. PORTMAN
                                       Federal Public Defender

                                        /S/
                                       ANGELA M. HANSEN
                                       Assistant Federal Public Defender